UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**PATRICIA MCINTIRE,**

    Plaintiff/Appellant,

  v.                                     Case No. 13-C-1053

**CAROLYN W. COLVIN,**
Acting Commissioner of the
Social Security Administration,

    Defendant/Appellee.

# DECISION AND ORDER

Plaintiff Patricia Lee McIntire ("McIntire") appeals the May 30, 2013, adverse decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits based on the finding that she was not disabled through the March 13, 2008, date that she was last insured for purposes of such benefits. The Commissioner's most recent decision followed the Court's reversal and remand of the prior administrative decision on McIntire's application in *McIntire v. Astrue*, Case No. 11-C-1151, Court's July 10, 2012, Decision and Order (E.D. Wis.) (ECF Nos. 12, 13.)

## Background

The Social Security Act authorizes disability benefits for those who

are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that physical and/or mental impairments prevent her from doing not only her previous work, but any other substantial gainful employment that exists in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner has established a five-step sequential analysis. *See* 20 C.F.R. § 404.1520. The Commissioner's evaluation requires consideration of the following issues in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals an impairment listed by the Commissioner, *see* 20 C.F.R. § 404, Subpart P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy. *See Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, the Commissioner has the burden at step five to show work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience and functional capacity. 20 C.F.R. § 404.1560(c)(2). The Court will uphold the Commissioner's final decision if the administrative law judge ("ALJ") applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Bates v. Colvin,* 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098.

## Analysis

McIntire, who alleges that she has been disabled since December 17, 2005, contends that the ALJ improperly evaluated her credibility because he used boilerplate language that has been repeatedly criticized, did not follow the Social Security Ruling ("SSR") 97-7p procedure for evaluating her credibility,[1] made factual errors, his assessment of the medical

---

[1] SSR 97-7p provides in part,

In recognition of the fact that an individual's symptoms can

- 3 -

evidence was improper, and he did not adequately consider whether her impairments meet or equal § 11.00 of the Listing of Impairments for neurological impairments. McIntire also asserts that the specific *Dictionary of Occupational Titles* position numbers cited by the vocational expert exceed her residual functional capacity ("RFC").

The ALJ found that through the date last insured McIntire had the severe impairments of being status post cerebrovascular accident and

---

> sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

1996 WL 374186, at * 3 (emphasis added).

ischemic attacks, degenerative disk disease of the spine, and depression. In assessing McIntire's residual functional capacity, the ALJ engaged in an analysis of her credibility.

An ALJ's credibility determination must be upheld unless it is patently wrong. "After the boilerplate recital (*see Parker v. Astrue,* 597 F.3d 920, 921-22 (7th Cir. 2010)) that 'based on the evidence, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible,'" *McClesky v. Astrue,* 606 F.3d 351, 352 (7th Cir. 2010), the ALJ cited numerous factors that he found undermined McIntire's credibility. He began by noting that despite alleging disability after her first stroke in December 2012, McIntire had stopped working a year earlier following a move. He also noted that McIntire went on a vacation out of the country only two months after she claimed to be unable to maintain any position for more than five minutes, suggesting to the ALJ that her alleged symptoms and limitations were somewhat overstated. The ALJ's credibility analysis goes downhill from there because many of the facts he cited are in error. (*See* SSR 97-7p, 1996 WL 374186, at * 4. "The determination or decision must contain specific reasons for the finding on

credibility, *supported by the evidence in the case record,* and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.") (emphasis added).

The ALJ inaccurately stated the medical record "consistently documents her denial of any numbness, tingling or weakness in her lower extremities." (Tr. 643.) However, on January 29, 2007, McIntire complained to Dr. Arvind Ahuja, M.D., ("Ahuja") of neck pain with axial weakness in the legs and hyperreflexia, dizziness and some imbalance, some heaviness in her legs, worse in the left leg than in the right, and occasional problems with dropping things. (Tr. 842.) A January 12, 2007, MRI showed intervertebral disk space narrowing and some disk dessication in the lumbar spine at L5-S1 as well as bone marrow changes in L5-S1 consistent with degenerative changes, with probable disk herniation impinging on the thecal sac. (Tr. 392-93.)

The ALJ also stated there was no aneurysm, and that McIntire did not seek treatment for the aneurysm prior to her date last insured. However, a July 14, 2006, MRA of the brain showed a right periophthalmic

artery aneurysm. (Tr. 262-63.) (*See also* Tr. 239-40. (Jan. 17, 2007, test.)) Ahuja followed McIntire for the aneurysm.

Contrary to evidence contained in the record, ALJ also found that McIntire did not seek treatment for her upper extremity complaints prior to the date last insured (Tr. 840), that she testified that her dizziness was well-controlled with medication (Tr. 214), and that McIntire did not pursue treatment for her left eye problems until after her date last insured (Tr. 510, 513). (*See also* Tr. 524 (May 21, 2008, noting eye problems since February). Furthermore, contrary to SSR 97-7p, there is no indication that the ALJ considered the medications taken by McIntire, which according to information from the MedlinePlus and *PDR Health* websites have side effects, as shown below, that are relevant to her complaints and should have been considered. As of January 11, 2008, (Tr. 544), McIntire was taking Lisinopril (excessive tiredness, weakness, dizziness), Zetia (extreme tiredness, lack of energy) Aggrenox, and Lexapro (tiredness, drowsiness). http://www.nlm.nih.gov/medlineplus/druginfo/meds (Lisinopril and Zetia); http://www.pdrhealth.com/drugs/lexapro (both lasted visited September 26, 2014).

Despite the deferential standard for review of credibility determinations, the compounded effect of these errors does not allow the

Court to uphold the ALJ's credibility determination. An ALJ's credibility determinations are given special deference, but the ALJ must still "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted). These errors are threaded throughout the ALJ's decision and require that he revisit his assessment of the medical opinions of record and the weight accorded to them, as well as the residual functional capacity assessment, and the determination of McIntire's ability to engage in a significant number of jobs in the national economy.

Additionally, the ALJ did not adequately discuss whether McIntire's impairments meet or equal § 11.00 of the Listing of Impairments for neurological impairments. *See Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."). *See also, Ribaudo,* 458 F.3d at 584. This final error is particularly troubling because the remand order required the ALJ to analyze McIntire's impairment under § 11.00 of the Listings. The ALJ stated he specifically considered § 11.04 of the Listings (Tr. 639). However, no analysis of § 11.00 is included. (*See* Tr. 639-41.) A goal of the administrative process is to give fair and prompt

consideration to an application of disability.  Multiple remands of a single application do not further this goal.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Commissioner's denial of benefits is **REVERSED**, and this matter is **REMANDED** for rehearing and reconsideration of the evidence pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is **DIRECTED TO ENTER JUDGMENT** accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of September, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**